UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

——————————————————————————X

MARTIN MELSON and RONALD TODD,

                    Plaintiffs,

        -against-

THE CITY OF NEW YORK, NEW YORK CITY
POLICE OFFICER JAMES SUTTON, NEW YORK
CITY POLICE CAPTAIN JOHN DOE # 1, and
NEW YORK CITY POLICE OFFICERS JOHN
DOE #2-#4, and NEW YORK CITY POLICE
SERGEANT JANE ROE #1,

                    Defendants.

——————————————————————————X

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★    SEP 1 2 2005    ★

P.M. _____
TIME A.M. _____

**OPINION & ORDER**
**CV-00-3211 (SJF)(RML)**

FEUERSTEIN, J.

        Martin Melson (Melson) and Ronald Todd (Todd) (collectively, plaintiffs) commenced

this civil rights action pursuant to 42 U.S.C. § 1983 against defendants The City of New York

(the City), New York City Police Officer James Sutton (Sutton), and New York City Police

Captain John Doe # 1, New York City Police Officers John Doe #2-#4, and New York City

Police Sergeant Jane Roe # 1 (collectively, the Doe defendants), alleging, *inter alia*, violations of

their First, Fourth, Fifth, Sixth, Eighth and Fourteenth Amendment rights, as well as state law

claims for trespass, false arrest, false imprisonment, assault, battery, intentional and negligent

infliction of emotional distress and conspiracy. The City now moves pursuant to Rule 56 of the

Federal Rules of Civil Procedure for summary judgment dismissing the complaint against it, and

plaintiffs cross-move for permission to substitute Police Officers Dennis McCreight (McCreight)

and Washington Calle (Calle) and Sergeant Anne Richards (Richards) for the Doe defendants

1

and for an order compelling the City to produce certain discovery[1]. For the reasons stated herein, the City's motion is granted and plaintiffs' cross motion is denied.

## I.    BACKGROUND

### A.    Factual Background[2]

#### 1.    The Parties

Sutton is a black male who, at all relevant times, was a New York City police officer residing with his cousin Conrad Boyd (Boyd) at 1334 Dean Street, Brooklyn, New York.

Todd is a Caucasian male. At all relevant times, Melson was the president of Multi Unit Services (MUS) and Todd was an employee of MUS.

#### 2.    The February 1999 Incident

In or about February 1999, plaintiffs were retained by Superior Bank to repossess a 1993 black Volvo automobile and a Saab automobile owned by Boyd. When plaintiffs arrived at 1334 Dean Street, Sutton answered the door. A verbal altercation ensued between Sutton and Melson. According to plaintiffs, Sutton used racial epithets, became agitated, and threatened them. It is

---

[1] Although Melson has not submitted a formal cross motion, he also requests that he be permitted to substitute McCreight, Calle, and Richards for the Doe defendants and incorporates the arguments set forth in Todd's cross motion. Accordingly, I will treat the cross motion as submitted by both plaintiffs.

[2] The facts are derived from the City's statement of material facts pursuant to Local Rule 56.1 and the accompanying affidavits and other evidentiary material filed in support of the City's motion for summary judgment and from plaintiffs' counter-statements pursuant to Local Rule 56.1 and the accompanying affidavits and other evidentiary material filed in support thereof. The facts are undisputed unless otherwise indicated.

undisputed that Sutton was not wearing a police officer uniform, did not show plaintiffs a police badge, and never informed them that he was a New York City police officer during this incident. Plaintiffs left the location after the altercation without having repossessed the vehicles.

### 3. The Repossession of the Saab

On or about May 15, 1999, plaintiffs returned to 1334 Dean Street to repossess the vehicles. The Saab was towed away without incident, but plaintiffs were unable to locate the Volvo at the premises. Sometime thereafter, but prior to June 5, 1999, Sutton called MUS to complain about the repossession of the Saab.

### 4. The June 5, 1999 Incident

On or about June 5, 1999, between 8:45 a.m. and 9:00 a.m., plaintiffs returned to 1334 Dean Street to repossess the Volvo. As they approached the residence, Melson observed the Volvo parked nearby on the street and called a towing company. As plaintiffs awaited the tow truck, Todd observed Boyd leave the residence. He called 911 because of the previous altercation with Sutton, then exited his car with the repossession papers and walked toward Boyd.

When Todd arrived at the Volvo, the car was running. Todd unsuccessfully attempted to flatten the passenger-side tire with a knife, then he walked around to the driver-side of the vehicle, informed Boyd that the vehicle was being repossessed, and showed him the repossession papers. As Todd was placing the repossession papers on the dashboard through the open driver-side window, Boyd raised the window and moved the Volvo in reverse. Todd then opened the

driver-side door, grabbed his knife and slashed the driver-side tire, stopping the vehicle. Todd then attempted to grab the ignition keys from the starter switch, at which time a struggle ensued.

During the struggle, Sutton exited his residence with a handgun, yelled profanities at plaintiffs, and told Boyd to drive away. According to Todd, Sutton then grabbed him by his shirt, yanked him out of the vehicle, pointed his handgun at him, and yelled profanities and racial epithets at him. According to Melson, Sutton also pointed the handgun at him. Boyd then drove away in the Volvo and Sutton let Todd go and walked back into his residence. It is undisputed that Sutton was not in police uniform and did not show plaintiffs a police badge, threaten or attempt to arrest plaintiffs, identify himself as a police officer, or otherwise give any indication that he was a police officer during the incident. A witness to the incident called 911.

Plaintiffs initially left the scene, but returned fifteen minutes later and informed Sergeant Mark Lawler (Lawler) that, as they were attempting to repossess a vehicle from in front of 1334 Dean Street, a struggle ensued between Todd and the owner of the vehicle; that Sutton placed a gun to the back of Todd's head; and that Sutton then fled into the residence at 1334 Dean Street. Lawler then knocked on the door at 1334 Dean Street. Sutton opened the door and advised Lawler that he was a police officer, showed his identification and badge, and informed Lawler that he believed the man in the Volvo was being robbed. Lawler then directed all parties to go to the 77th Precinct for further investigation.

5.    At the Precinct

At approximately 10:00 a.m., plaintiffs drove themselves to the 77th Precinct to file a criminal complaint against Sutton. According to Melson, there were police vehicles in front of

4

and behind them while they were driving. Although it is undisputed that plaintiffs entered the precinct unescorted by police officers, Melson contends that when he and Todd arrived at the precinct, officers told them where to park and to wait inside the precinct. Moreover, although it is undisputed that plaintiffs sat on a bench located in an area with public access and with direct access to the entrance of the precinct, Melson contends that the bench was surrounded by metal gates about four feet high, beyond which he and Todd were not permitted to go.

Plaintiffs were never handcuffed at the precinct and left the bench area, *inter alia*, to smoke cigarettes and/or to make telephone calls. Nevertheless, according to Melson, he and Todd were not free to leave the precinct at the same time and he felt threatened by Captain McDermott's tone of voice and questioning. Although it is also undisputed that plaintiffs were never fingerprinted, photographed, searched, placed in a cell, or informed that they were under arrest while at the precinct, and did not have their personal property taken from them, Melson contends that he was unable to obtain any meaningful response to his inquiries as to what was happening; he was required to use a prisoner's bathroom; his and Todd's requests for food and water were denied; and he and Todd were not permitted to be in an air conditioned area, which would have been more desirable.

At approximately noon, Melson gave a statement to police officers. Between noon and 12:30 p.m., officers informed Melson that they wanted to conduct a tape recorded interview, but there would be a delay occasioned by the District Attorney's office. According to Melson, when he contacted the District Attorney's office to inquire about the delay, he was told that nobody had been called to go to the precinct. Officers approached Melson between 3:00 and 3:30 p.m. to conduct the taped interview. At that time, Melson informed the officers that he wanted to consult

his attorney. The officers waited for approximately one hour and forty minutes while Melson attempted to consult with counsel.

Todd's tape recorded interview began at approximately 4:45 p.m. Todd requested to consult with counsel, which stopped the interview. Thereafter, Todd consulted with an attorney and, at 5:15 p.m., Melson spoke with Todd. It is undisputed that plaintiffs then left the precinct and returned at approximately 6:00 p.m., at which time they spoke with a representative from ABC news outside the precinct.

Todd's tape recorded interview recommenced at 6:50 p.m. and concluded at 7:22 p.m. Melson's tape recorded interview commenced at 7:38 p.m. Melson contends that the circumstances of his tape recorded interview were intimidating, as there were five people present who were hostile and antagonistic in their questioning. According to Melson, he was asked to give a written statement between midnight and 1:00 a.m., and he left the precinct at 1:30 a.m.

At 10:55 p.m. on the date of the incident, Sutton was arrested and suspended from duty, his identification card and shield were confiscated, and his duty captain recommended that disciplinary charges be filed against him. Sutton was subsequently charged with menacing in the second degree, which ultimately resulted in an adjournment in contemplation of dismissal (ACD).


B.    Procedural History

On September 3, 1999, plaintiffs served a notice of claim upon the City alleging claims for assault, battery, false arrest, false imprisonment, deprivation of civil rights, and retaliation. Specifically, plaintiffs claimed that on June 5, 1999, Sutton assaulted and threatened them with

6

physical harm by drawing a weapon, and that thereafter, when they complained about Sutton's activities at the precinct, police officers detained them, prevented them from leaving, and subjected them to degrading behavior.

On June 5, 2000, plaintiffs commenced this civil rights action under 42 U.S.C. § 1983 against the City, Sutton[3], and the Doe defendants alleging, *inter alia*, violations of their First, Fourth, Fifth, Sixth, Eighth and Fourteenth Amendment rights, as well as state law claims for trespass, false arrest, false imprisonment, assault, battery, intentional and negligent infliction of emotional distress, and conspiracy. Specifically, plaintiffs allege, *inter alia*, (1) that Sutton, acting under color of state law, violated their constitutional rights when he assaulted them on June 5, 1999; (2) that the City (a) had an unconstitutional policy, practice or custom of failing to properly screen, supervise, discipline, transfer, counsel and/or control detectives and officers, (b) failed to effectively screen, hire, train, supervise and discipline its officers, including Sutton, for their propensity for violence and other misconduct, racial bias, untruthfulness, and failure to protect citizens from unconstitutional conduct, and (c) maintained an inadequate structure for risk containment and stress management for its officers; (3) that the City and Doe defendants (a) violated plaintiffs' First Amendment right to petition the government for redress of grievances, insofar as the conduct of the Doe defendants' at the precinct hindered their attempts at lodging a criminal complaint against a police officer, and (b) violated their Fourth, Fifth, Sixth, Eighth and Fourteenth Amendment rights against deprivation of liberty without due process and false arrest and imprisonment without probable cause; (4) that all defendants conspired to violate their civil rights by commanding them not to leave the precinct, refusing to take their complaint against a

---

[3] Sutton has not filed an answer or otherwise appeared in this action.

7

police officer, tape recording their statements, and frustrating their constitutional rights; and (5) that the City is liable to them for their state law claims under a *respondeat superior* theory.

The City now moves pursuant to Rule 56 of the Federal Rules of Civil Procedure for summary judgment dismissing the complaint against it and plaintiffs cross-move to substitute certain named individuals for the Doe defendants and to compel certain discovery.

## II.   ANALYSIS

### A.   Summary Judgment Standard

Summary judgment should not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  A fact is material "if it might affect the outcome of the suit under the governing law." Holtz v. Rockefeller & Co., 258 F.3d 62, 69 (2d Cir. 2001).  An issue of fact is genuine only if a jury could reasonably find in favor of the nonmoving party based on that fact. See id. The moving party bears the initial burden of establishing the absence of any genuine issue of material fact, after which the burden shifts to the nonmoving party to establish the existence of a factual question that must be resolved at trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986).  The trial court is required to construe the evidence in the light most favorable to the nonmoving party, and draw all reasonable inferences in its favor. See id. at 252; Cifarelli v. Vill. of Babylon, 93 F.3d 47, 51 (2d Cir. 1996).

B.    Section 1983 Claims

1.    Claims based on Sutton's Conduct

The City contends that plaintiffs' section 1983 claim against it fails because they cannot establish that Sutton was acting "under color of law" on June 5, 1999.

Neither plaintiff opposes, or otherwise addresses, this branch of the City's motion.

42 U.S.C. § 1983 provides, in pertinent part, that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured.

Thus, to state a claim under section 1983, a plaintiff must allege (1) that the challenged conduct was attributable at least in part to a person acting under color of state law, and (2) that such conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States.  See Briscoe v. LaHue, 460 U.S. 325, 329-330, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983); Sykes v. James, 13 F.3d 515, 519 (2d Cir. 1993), cert. denied, 512 U.S. 1240, 114 S.Ct. 2749, 129 L.Ed.2d 867 (1994).  Accordingly, in order to establish the City's liability under section 1983 for Sutton's conduct, plaintiffs must demonstrate that Sutton acted under color of state law.  See, e.g. Wahhab v. City of New York, No. 02 Civ. 0851, 2005 WL 323716, at * 9 (S.D.N.Y. Feb. 10, 2005)(holding that for liability to attach to the City on plaintiffs' section 1983 claims, the defendant officers must have acted under color of law).

It is "axiomatic that under 'color' of law means under 'pretense' of law and that acts of officers in the ambit of their personal pursuits are plainly excluded." Pitchell v. Callan, 13 F.3d

9

545, 547-548 (2d Cir. 1994)(internal quotations and citation omitted). That an officer was off duty at the time of the challenged conduct is not determinative in ascertaining whether he or she was acting "in the ambit of [his or her] personal pursuits." Id. at 548. Rather, liability under section 1983 may be imposed upon off-duty officers who (1) "invoke[] the real or apparent power of the police department;" or (2) "perform duties prescribed generally for police officers." Id. "[C]ourts look to the nature of the officer's act, not simply his duty status." Id.; see also Corio v. City of New York, No. 94 CV 1652, 1997 WL 104760, at * 2 (E.D.N.Y. Feb. 18, 1997)(holding that in making a determination regarding whether an officer acted under color of state law, the court should not focus on whether the officer was on-duty or off-duty, but rather should consider the nature of the officer's act and the relationship of that conduct to the performance of his official duties).

Sutton was not acting under color of state law when he allegedly assaulted plaintiffs on June 5, 1999. When Sutton grabbed Todd, yanked him out of the Volvo, yelled profanities and racial slurs at him, and pointed his gun at plaintiffs, he was neither acting in accordance with a police regulation, nor invoking the authority of the City police department. See, e.g. Pitchell, 13 F.3d at 548 (finding that the defendant-officers were not acting under color of law when one of the officers, while off-duty and drunk in his own home, used his own personal weapon to shoot a guest). It is undisputed that Sutton was not wearing his uniform, did not show his badge or police identification, and did not otherwise identify himself as a police officer during the incident. Compare Miqui v. City of New York, No. 01-CV-4628, 2003 WL 22937690, at * 4 (E.D.N.Y. Dec. 5, 2003)(finding that no reasonable jury could conclude that the defendant-officer was acting under color of law when he attacked the plaintiff, since the plaintiff conceded,

*inter alia*, that the officer was off-duty and out of uniform, and that he did not flash his badge or announce in any way that he was an auxiliary police officer); Corio, 1997 WL 104760, at * 2 (finding that the defendant-officer was not acting under color of law where the plaintiff conceded that at no time during the incident did he know or have reason to believe that the defendant was a police officer and where the defendant was not wearing his uniform and did not display his badge); with Jocks v. Tavernier, 316 F.3d 128, 134 (2d Cir. 2003)(finding that the defendant-officer acted under color of state law where, although he was off duty, he displayed his shield and identified himself as a police officer before he restrained the plaintiff); Wahhab, 2005 WL 323716, at * 11 (denying summary judgment dismissing plaintiff's section 1983 claim against the City where the defendant-officer threatened to invoke his official authority, and where there were questions of fact, *inter alia*, regarding whether the off-duty officers identified themselves in any manner and whether the plaintiff was aware that the defendants were police officers). Indeed, it is undisputed that plaintiffs did not even know that Sutton was a police officer until sometime after they arrived at the precinct. Since plaintiffs have failed to demonstrate that Sutton was acting under color of law on June 5, 1999, summary judgment dismissing their section 1983 claims against the City based upon Sutton's conduct is appropriate. See, e.g. Pitchell, 13 F.3d at 549 (holding that since neither of the defendant officers inflicted a constitutional injury on the plaintiff, the City could not be held liable to the plaintiff).

2.   Monell Claims

The City contends that plaintiffs' conclusory allegations that it failed to properly screen, supervise, train, discipline, transfer, hire, counsel or otherwise control its officers, without more,

11

are insufficient as a matter of law to establish municipal liability under section 1983. The City

further contends that, in any event, plaintiffs have failed to establish that any unconstitutional

policy, practice or custom caused their purported injuries. Moreover, according to the City, with

respect to the claims of municipal liability based upon Sutton's conduct, a single incident of

unconstitutional misconduct by a non-policymaking individual is insufficient to establish a

municipal policy or practice and, in any event, municipal liability cannot be imposed under a

theory of deliberate indifference in light of the actions it took subsequent to the assault, i.e.

placing Sutton on suspension and removing his badge on the date of the incident, prosecuting the

criminal charges against him, and recommending the institution of disciplinary proceedings

against him.

Neither plaintiff opposes, or otherwise addresses, this branch of the City's motion.

Although a municipality cannot be held liable under section 1983 on a *respondeat*

*superior* theory, see Monell v. Department of Soc. Servs. of City of New York, 436 U.S. 658,

691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); Linder v. City of New York, 263 F.Supp.2d 585, 591

(E.D.N.Y. 2003), it may be held liable if the alleged offending conduct was undertaken pursuant

to "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by

[the municipal] officers[,] * * * [or] governmental 'custom' even though such a custom has not

received formal approval through the [municipality's] official decisionmaking [sic] channels."

Monell, 436 U.S. at 690, 98 S.Ct. 2018. To establish the existence of a municipal policy or

custom, the plaintiff must allege (1) the existence of a formal policy which is officially endorsed

by the municipality; (2) actions taken or decisions made by municipal officials with final

decision making authority, which caused the alleged violation of the plaintiff's civil rights; (3) a

practice so persistent and widespread that it constitutes a custom of which constructive knowledge can be implied on the part of the policymaking officials; or (4) a failure by policymakers to properly train or supervise their subordinates, amounting to "deliberate indifference" to the rights of those who come in contact with the municipal employees. <u>Moray v. City of Yonkers</u>, 924 F.Supp. 8, 12 (S.D.N.Y. 1996); <u>see also</u> <u>Davis v. Lynbrook Police Dept.</u>, 224 F.Supp.2d 463, 478 (E.D.N.Y. 2002). In addition, a plaintiff must demonstrate a causal connection between the alleged policy or custom and the deprivation of the plaintiff's constitutional rights. <u>See</u> <u>Board of County Commissioners of Bryan County, Okl. v. Brown</u>, 520 U.S. 397, 404, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997).

Plaintiffs fail to establish the existence of the requisite municipal policy or custom. <u>See, e.g.</u> <u>Brome v. City of New York</u>, No. 02 Civ. 7184, 2004 WL 502645, at * 7 (S.D.N.Y. Mar. 15, 2004)(granting summary judgment dismissing claims against the City were plaintiff offered nothing more than conclusory allegations of the City's failure to train and supervise the defendant officer). Plaintiffs allegations are based solely on their own interactions with Sutton and the Doe defendants and the events at issue in this action. <u>See, e.g.</u> <u>Walker v. New York City Police Dept.</u>, No. 94 CV 3608, 1996 WL 391564, at * 6 (E.D.N.Y. Jun. 24, 1996)(granting the City's motion for summary judgment where plaintiff's allegations of inadequate training were based solely on his own interactions with the defendant-detective and the events at issue in that lawsuit).

Moreover, with respect to plaintiffs' claims of failure to supervise, discipline, transfer, counsel or control, plaintiffs have not identified any specific deficiencies in the City's supervision or discipline of Sutton or the Doe defendants, and there is no evidence from which it

may be inferred that the City had notice of a pattern of unconstitutional conduct on the part of its police officers and failed to act thereon. See, e.g. Amnesty America v. Town of West Hartford, 361 F.3d 113, 128 (2d Cir. 2004)(holding that the plaintiff's evidence must establish that a policymaking official had notice of a potentially serious problem of unconstitutional conduct, such that the need for corrective action or supervision was obvious); Turpin v. Mailet, 619 F.2d 196, 203 (2d Cir. 1980)(finding no official municipal policy and distinguishing cases in which responsible municipal officials are aware of a pattern of unconstitutional action on the part of municipal officers and authorize or encourage further misconduct by failing to act); Smith v. City of New York, No. 03 Civ. 7576, 2005 WL 1026551, at * 9 (S.D.N.Y. May 3, 2005)(granting summary judgment dismissing plaintiff's failure to supervise or train claims against the City where the plaintiff did not identify any specific deficiencies in the City's supervision or training of its correction officers).

Likewise, with respect to plaintiffs' claims of failure to train, the record is bereft of any evidence regarding the City's training or screening procedures or otherwise substantiating plaintiffs' contentions regarding the purported inadequacies of such procedures. See, e.g. Amnesty America, 361 F.3d at 129 (affirming summary judgment dismissing the failure to train claims because the plaintiff failed to offer any evidence regarding the purported inadequacies of the City's training program or any causal connection between those inadequacies and the alleged constitutional violations); Walker, 1996 WL 391564, at * 6 (granting summary judgment dismissing plaintiff's failure to train claim against the City where plaintiff failed to allege any specific training procedures that were not implemented); Turk v. McCarthy, 661 F.Supp. 1526, 1532 (E.D.N.Y. 1987)(finding that summary judgment was warranted dismissing plaintiff's

14

claims of negligent training where plaintiff failed to establish that specific deficiencies in the training given to police officers led the misbehaving officer to engage in the alleged misconduct). In addition, with respect to plaintiffs' claims of failure to screen, the record is bereft of any evidence regarding the City's screening of Sutton's or the Doe defendants' employment applications or backgrounds, and there is no evidence from which it may be inferred that adequate scrutiny of the applications would have led "a reasonable policymaker to conclude that the plainly obvious consequence of the decision to hire [Sutton and the Doe defendants] would be the deprivation of a third party's federally protected right." Brown, 520 U.S. at 411, 117 S.Ct. 1382. Accordingly, summary judgment dismissing plaintiffs' Monell claims against the City based on Sutton's and the Doe defendants' conduct is appropriate.

However, even if the City was negligent in its hiring, training, supervision, screening, or discipline of Sutton, a single assault by a non-policymaking police officer, absent additional evidence of supervisory indifference, is generally insufficient to establish a municipal policy or custom of inadequate training and supervision. See, City of Oklahoma City v. Tuttle, 471 U.S. 808, 819-824, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985)(plurality opinion)(holding that the occurrence of a single incident of excessive force was insufficient proof of a municipal policy of inadequate police officer training and supervision); Turpin, 619 F.2d at 202(accord). Moreover, since it is undisputed that the City immediately suspended Sutton following the June 5, 1999 incident, plaintiffs cannot establish the requisite "deliberate indifference" on the part of the City. See, e.g. Miqui, 2003 WL 22937690, at * 6 (finding that the City's immediate suspension of the defendant officer who assaulted the infant plaintiff while off duty was a "far cry" from the deliberate indifference that the plaintiffs alleged). Accordingly, summary judgment dismissing

plaintiffs' municipal liability claims against the City is warranted.

3. Claims based on the Doe Defendants' Conduct

a. First Amendment Claims

The City contends, *inter alia*, that private citizens do not have a constitutional right to compel government officials to arrest or prosecute another person and, therefore, the filing of a criminal complaint does not constitute an activity protected by the First Amendment. The City further contends that, in any event, plaintiffs have not shown that their right to petition the government was violated in any way, since the sixteen hour delay in filing the criminal complaint was not unreasonable or designed to discourage the filing of the complaint and a delay, by itself, does not implicate any constitutional rights. In addition, the City contends that the purportedly rude and inconsiderate treatment that plaintiffs received at the precinct is insufficient to sustain a First Amendment claim.

Todd contends that a trier of fact could reasonably conclude that there was a concerted effort on the part of the Doe defendants to make plaintiffs abandon their criminal complaint against a fellow officer. Melson contends that there exist questions of fact, *inter alia*, regarding whether the Doe defendants intended to retaliate against plaintiffs for seeking to file a criminal complaint against a fellow officer and to intimidate them into not filing the complaint by detaining them at the precinct for sixteen hours.

To prevail on their First Amendment claim, plaintiffs must establish (1) that they exercised a First Amendment right; (2) that defendants acted in response to their exercise of that right; and (3) that defendants' actions effectively chilled the exercise of their First Amendment

right. See, Curley v. Village of Suffern, 268 F.3d 65, 73 (2d Cir. 2001)[4].

### i.    First Amendment Right

The First Amendment right alleged by plaintiffs is the right to petition the government for redress of grievances. Contrary to the City's contention, the filing of a criminal complaint by a victim of a crime constitutes an exercise of the First Amendment right to petition the government for redress of grievances. See, Estate of Morris ex rel. Morris v. Dapolito, 297 F.Supp.2d 680 (S.D.N.Y. 2004); see also Lott v. Andrews Center, 259 F.Supp.2d 564, 568 (E.D.Tex. 2003)(holding that the filing of a criminal complaint with law enforcement officials constitutes an exercise of the First Amendment right to petition the government for the redress of grievances).

### ii.    Motivation

Plaintiffs focus solely on the motivation of the Doe defendants in opposing the City's motion for summary judgment. However, even assuming that material questions of fact exist regarding the Doe defendants' motivation with respect to their treatment of plaintiffs at the precinct, plaintiffs must still establish that those defendants' conduct had a chilling effect on the exercise of their right to petition in order to defeat summary judgment.

---

[4] Although Curley involved a free speech claim under the First Amendment, the right to petition the government for redress of grievances under the First Amendment is "intimately connected both in origin and in purpose with the other First Amendment rights of free speech and free press," Colondres v. Scoppetta, 290 F.Supp.2d 376, 381-382 (E.D.N.Y. 2003)(citation omitted). Therefore, the analysis is the same.

### iii. Chilling Effect

Plaintiffs must establish that their First Amendment right to petition the government for redress of grievances was "actually chilled." Curley, 268 F.3d at 73. "The chilling effect cannot be remote or speculative. * * * Actual inhibition is required." Colondres v. Scoppeta, 290 F.Supp.2d 376, 382 (E.D.N.Y. 2003)(citations omitted). Thus, where a plaintiff cannot show any change in his or her behavior, he cannot establish a chilling of his First Amendment rights. Curley, 268 F.3d at 73. "Moreover, a *de minimus* deterrence from engaging in [the protected activity] is not constitutionally significant." Ford v. Reynolds, 326 F.Supp.2d 392, 403 (E.D.N.Y. 2004); see also Colondres, 290 F.Supp.2d at 382 (accord).

Although plaintiffs allege that they were demoralized at the precinct and that their efforts at filing a criminal complaint against Sutton were hindered, it is undisputed that they actually filed the criminal complaint against Sutton. Accordingly, plaintiffs cannot establish any chilling effect on their First Amendment right to petition the government for the redress of grievances. See, e.g. Curley, 268 F.3d at 73 (finding no chilling effect where the plaintiff continued to run for public office even after the challenged arrest); Cardew v. New York State Dept. of Correctional Services, No. 01 Civ. 3669, 2004 WL 943575, at * 6 (S.D.N.Y. Apr. 30, 2004)(finding that plaintiff's exercise of the right to petition was not chilled where he filed many of his grievances after defendants' alleged threats). Therefore, summary judgment dismissing plaintiffs' First Amendment claims is warranted.

b.    Due Process, False Arrest and False Imprisonment Claims[5]

The City contends that no reasonable jury could conclude that the Doe defendants intended to confine plaintiffs, or that plaintiffs were aware of any such confinement and, thus, they cannot establish a false arrest or false imprisonment claim.

Todd contends that the evidence established that plaintiffs were unreasonably detained for sixteen hours, subjected to humiliating treatment, and not afforded even the most basic considerations given to others who file criminal complaints. Melson contends that there exists a question of fact regarding whether the Doe defendants detained plaintiffs at the precinct for any significant period of time without lawful authority, which is sufficient to preclude summary judgment on their false imprisonment and Fourth Amendment claims under both federal and state law. Specifically, Melson contends that there are questions of fact regarding whether the amount of time plaintiffs were held was unreasonable and unnecessary in relation to any lawful police purpose; whether they could or should have been permitted to leave together and/or return to the precinct at a more convenient time; whether they should have been permitted to simply drop the matter if they wished; and whether the Doe defendants sought to retaliate against them for attempting to file a criminal complaint against a fellow officer and to intimidate them, or

---

[5] The elements of a false arrest claim under section 1983 are substantially the same as the elements of such a claim under New York law and, thus, the analysis of plaintiff's federal and state claims is identical. See, Boyd v. City of New York, 336 F.3d 72, 75 (2d Cir. 2003); see also Barnes v. City of New York, No. 96 CV 2702, 1998 WL 19485, at * 4 (E.D.N.Y. Jan. 20, 1998)(holding that the same elements necessary to establish a false imprisonment claim under state law must be established to prove constitutional claims of unreasonable seizure and of due process deprivation ground in false arrest claim under section 1983). In addition, the claims of false arrest and false imprisonment are synonymous under both state and federal law and, thus, those claims may be addressed together. See, Wray v. City of New York, 340 F.Supp.2d 291, 301 (E.D.N.Y. 2004); Gentile v. City of New York, No. 01 Civ. 8640, 2003 WL 1872651, at * 2 (S.D.N.Y. Apr. 10, 2003).

otherwise acted with improper motivation.

To establish a claim for false arrest or false imprisonment under 42 U.S.C. § 1983 and New York law, a plaintiff must show that 'the defendant intentionally confined him without his consent and without justification,'" Escalera v. Lunn, 361 F.3d 737, 743 (2d Cir. 2004)(citing Weyant v. Okst, 101 F.3d 845, 852 [2d Cir. 1996]), and that the plaintiff was aware of the confinement. Bernard v. U.S., 25 F.3d 98, 102 (2d Cir. 1994). Moreover, to establish a false imprisonment claim, a plaintiff must make "a prima facie showing of actual confinement or threatening conduct," Campoverde v. Sony Picture Entertainment, No. 01 Civ. 7775, 2002 WL 31163804, at * 8 (S.D.N.Y. Sept. 30, 2002), regardless of the length of time of the unlawful detention. Id.

Even assuming that questions of fact exist with respect to the Doe defendants' intent to confine plaintiffs, plaintiffs cannot establish that they were actually confined at the 77th Precinct. Plaintiffs voluntarily entered and remained at the precinct with the intent to file a criminal complaint against Sutton. Plaintiffs do not dispute that they were never handcuffed, fingerprinted, photographed, searched, placed in a cell, or informed that they were under arrest. Even assuming that plaintiffs were not permitted to "go beyond" the bench area, they do not contend that they were not permitted to leave the bench area to exit the precinct and, indeed, they do not dispute that they individually left the precinct at certain times. Plaintiffs' subjective beliefs that they were not free to leave or that they should have been afforded better treatment while at the precinct are insufficient to establish a prima facie case of false arrest, false imprisonment, or deprivation of a liberty interest. See, e.g. Bower v. Weisman, 639 F.Supp. 532, 540-541 (S.D.N.Y. 1986)(dismissing plaintiff's claim for false imprisonment where although

20

plaintiff felt like a prisoner, she was permitted ingress and egress from the place where she was allegedly detained and her movements were otherwise unrestricted and, thus, there was no actual confinement); see also Fernandez v. City of New York, No. 02 Civ. 8195, 2003 WL 21756140, at * 6 (S.D.N.Y. Jul. 29, 2003)(dismissing plaintiff's false arrest claim where there was no indication that the plaintiff was ever physically restrained in any way or told that he could not leave despite the confrontational comments by the defendant officer). Moreover, other than Melson's conclusory assertion in his opposition, there is no evidence in the record that plaintiffs wished to drop the matter of filing a criminal complaint against Sutton but were not permitted to do so. In fact, that contention is belied by plaintiffs' First Amendment claims. Accordingly, since there are no material issues of fact in dispute with respect to plaintiffs' actual confinement, summary judgment dismissing plaintiffs' federal and state law claims based upon their alleged false arrest and imprisonment is granted.

### 4. Conspiracy Claims

The City contends, *inter alia*, that plaintiffs' § 1983 conspiracy claim is barred by the "intra-corporate conspiracy" doctrine.

Neither plaintiff opposes, or otherwise addresses, this branch of the City's motion.

In order to state a valid claim of conspiracy under 42 U.S.C. § 1983, the plaintiff must allege (1) the existence of a conspiracy; and (2) facts showing the actual deprivation of constitutional rights. See Romer v. Morgenthau, 119 F.Supp.2d 346, 363 (S.D.N.Y. 2000). "A violated constitutional right is a natural prerequisite to a claim of conspiracy to violate such right." Id.; see also Malsh v. Austin, 901 F.Supp. 757, 763 (S.D.N.Y. 1995)(holding that there

can be no conspiracy to violate the plaintiff's constitutional rights where the plaintiff has failed to allege any facts showing a violation of his constitutional rights). Since, as noted above, plaintiffs cannot sufficiently allege a violation of their constitutional rights, they cannot sustain a claim of conspiracy to violate those rights. See, e.g. Roesch v. Otarola, 980 F.2d 850, 854-855 (2d Cir. 1992)(dismissing conspiracy claim against the private actors on the ground that since there was no constitutional violation by the state actor, there could be no conspiracy to deprive the plaintiff of his constitutional rights); Romer, 119 F.Supp.2d at 363 (dismissing plaintiff's conspiracy claims under § 1983 because he could not sufficiently allege a violation of his constitutional rights); Woodard v. Johnson, No. 93 CV 3925, 1995 WL 406132, at * 4 (E.D.N.Y. June 23, 1995)(finding no basis for liability on the basis of a conspiracy were there was no underlying constitutional violation).

Moreover, even if there was a constitutional violation, the "intra-corporate conspiracy" doctrine, sometimes called the "intra-enterprise conspiracy" doctrine, provides that a corporation or public entity "generally cannot conspire with its employees or agents as all are considered a single entity." Everson v. New York City Transit Auth., 216 F.Supp.2d 71, 76 (E.D.N.Y. 2002)(citation omitted); see also, Quinn v. Nassau County Police Dept., 53 F.Supp.2d 347, 359 (E.D.N.Y. 1999). Since the Doe defendants were all employees of the City, pursuant to the intra-corporate conspiracy doctrine, those defendants are all considered to be a single entity for the purpose of plaintiffs' conspiracy claim.

An exception to the intra-corporate conspiracy doctrine applies where a plaintiff "adequately alleges that each defendant possessed an independent, personal conspiratorial purpose," wholly separate and apart from the entity. Everson, 216 F.Supp.2d at 76 (citation

22

omitted); see also Girard v. 94th St. & Fifth Ave. Corp., 530 F.2d 66, 71-72 (2d Cir. 1976).

Whether the doctrine applies depends upon whether each defendant was acting in furtherance of the municipality's interests, or whether their conduct was motivated by a personal interest. Quinn, 53 F.Supp.2d at 360. However, personal bias or prejudice alone, does not support application of the exception; rather there must be some other personal interest or stake alleged on the part of the individual defendants. See, Salgado v. City of New York, 00 Civ. 3667, 2001 WL 290051, at * 8 (S.D.N.Y. Mar. 26, 2001); Johnson v. Nyack Hosp., 954 F.Supp. 717, 723 (S.D.N.Y. 1997).

Plaintiffs fail to even allege that any of the Doe defendants were motivated by a personal interest wholly separate from the City's interest. Accordingly, summary judgment dismissing plaintiffs' conspiracy claims is warranted.


C.    Claims Against the Doe Defendants

The City contends that plaintiffs' claims against the Doe defendants should be dismissed since they failed to substitute the actual names of those defendants within the applicable three-year statute of limitations.

Plaintiffs cross-move to substitute Richards, McCreight and Calle for the Doe defendants, contending that the City and Doe defendants would not be prejudiced thereby since, *inter alia*, the examinations before trial of all three individuals have already been conducted.

42 U.S.C. § 1983 claims are governed by New York's three year statute of limitations. See, Owens v. Okure, 488 U.S. 235, 249-250, 109 S.Ct. 573, 102 L.Ed.2d 594 (1989); Pearl v. City of Long Beach, 296 F.3d 76, 79 (2d Cir. 2002), cert. denied 538 U.S. 922, 123 S.Ct. 1574,

155 L.Ed.2d 313 (2003). "'John Doe' pleadings cannot be used to circumvent statutes of limitations because replacing a 'John Doe' with a named party in effect constitutes a change in the party sued." Barrow v. Wethersfield Police Dept., 66 F.3d 466, 458 (2d Cir. 1995), modified, 74 F.3d 1366 (2d Cir. 1996)(internal quotations and citation omitted); see also Covington v. Warden of C-95, 93 CV 1958, 1996 WL 75211, at * 2 (E.D.N.Y. Feb. 8, 1996).

Plaintiffs did not seek leave to amend the complaint to include the names of the Doe defendants within the three year limitations period, i.e. by June 5, 2002. Accordingly, plaintiffs' section 1983 claims against the Doe defendants are time-barred unless they relate back to the original complaint pursuant to Rule 15(c) of the Federal Rules of Civil Procedure.

Rule 15(c) provides that an amendment of a pleading relates back to the date of the original pleading when (1) the claim arose out of the conduct, transaction, or occurrence set forth in the original pleading; (2) the party to be brought in received such notice of the action within 120 days of its institution such that he or she will not be prejudiced in maintaining a defense; (3) the party to be brought in knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party; and (4) the second and third criteria were fulfilled within the established limitations period. See, Fed. R. Civ. P. 15(c); Barrow, 66 F.3d at 468; Olumuyiwa v. Harvard Protection Services, Inc., 98-CV-5110, 2000 WL 620202, at * 2 (E.D.N.Y. May 12, 2000).

Rule 15(c) does not, however, allow an amended complaint adding new defendants to relate back to the original complaint if the newly-added defendants were not named originally because the plaintiff did not know their identities. See, Tapia-Ortiz v. Doe, 171 F.3d 150, 152 (2d Cir. 1999); Barrow, 66 F.3d at 470. This is so because a failure to identify individual

24

defendants when the plaintiff knows that such defendants must be named cannot be characterized as a mistake. Barrow, 66 F.3d at 470; Olumuyiwa, 2000 WL 620202, at * 3. Accordingly, a plaintiff is required to substitute named defendants for "John Doe" defendants prior to the expiration of the statute of limitations period. See, Covington, 1996 WL 75211, at * 2.

The naming of Doe defendants manifests plaintiffs' knowledge that such defendants were required to be named in this action. Therefore, their failure to identify those individual defendants does not constitute a mistake for the purposes of relation back pursuant to Fed. R. Civ. P. 15(c). Accordingly, summary judgment dismissing plaintiffs' claims against the Doe defendants as time-barred is appropriate. See, e.g. Tapia-Ortiz, 171 F.3d at 152 (holding that plaintiff's failure to name the "John Doe" agents until two years after the expiration of the statute of limitations period was fatal to his claim); Steiner v. City of New York, 920 F.Supp. 333, 341 (E.D.N.Y. 1996)(holding that Rule 15[c] does not apply where the individual police officers were not named because plaintiff had not identified them, and the amended complaints were not filed within the limitations period). Moreover, since plaintiffs' claims against the Doe defendants are time-barred, their cross motion for leave to amend the complaint to substitute Richards, McCreight and Calle for the Doe defendants is denied as futile.

D.   *Respondeat Superior* Claims[6]

---

[6] Although similar factual questions are involved between the issues of whether Sutton was acting under "color of law" for section 1983 purposes and whether he was acting "within the scope of his employment" for *respondeat superior* purposes, the inquiries are distinct and, thus, plaintiffs may proceed on their state law claims under a *respondeat superior* theory even though their section 1983 Monell claims are barred. See, e.g. Wahhab, 2005 WL 323716, at * 11; see also Mahmood v. City of New York, No. 01 Civ. 5899, 2003 WL 21047728, at * 3 (S.D.N.Y. May 8, 2003)(holding that the fact that a police officer uses, or abuses, his authority may be

The City contends that plaintiffs cannot maintain their *respondeat superior* claims against it because they cannot establish that Sutton was acting within the scope of his employment[7].

Neither plaintiff opposes, or otherwise addresses, this branch of the City's motion.

"Under New York law, the doctrine of *respondeat superior* renders an employer vicariously liable for a tort committed by an employee while acting within the scope of his employment." Tomka v. Seiler Corp., 66 F.3d 1295, 1317 (2d Cir. 1995)(citing Riviello v. Waldron, 47 N.Y.2d 297, 302, 418 N.Y.S.2d 300, 391 N.E.2d 1278 [1979]), abrogated on other grounds by Burlington Indus. Inc. v. Ellerth, 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998); see also Wahhab, 2005 WL 323716, at * 11 (holding that under New York law, an employer is vicariously liable where the employee acts in furtherance of the employer's business and the employer was or could have been exercising some control, either directly or indirectly, over the employee's activities). "However, an employer is not liable for torts committed by [an] employee for personal motives unrelated to the furtherance of the employer's business." Tomka, 66 F.3d at 1317-1318; see also Wahhab, 2005 WL 323716, at * 12 (holding that where an employee's conduct is brought on by a matter wholly personal in nature, the source of which is not job-related, his actions cannot be said to fall within the scope of his employment; Adorno v. Correctional Services Corp., 312 F.Supp.2d 505, 516 (S.D.N.Y. 2004)(holding that an employer will not be held liable under the doctrine of *respondeat superior* for actions which were not taken

relevant in deciding whether he was acting under color of state law, but is not relevant in determining whether his action was taken within the scope of his employment).

[7] Since plaintiff's state law false arrest and false imprisonment claims are dismissed for the reasons set forth above, and their intentional and negligent infliction of emotional distress and state law conspiracy claims are dismissed for the reasons set forth below, the remaining state law claims are for trespass, assault and battery, which pertain to Sutton's conduct only.

in furtherance of the employer's interest and which were undertaken by the employee for wholly personal motives).

To determine whether the defendant's challenged conduct falls within the scope of his or her employment, the court should consider the following five factors: (1) the time, place and occasion for the conduct; (2) the actual relationship between the employer and employee; (3) whether the employee commonly engages in such conduct; (4) the extent of the departure from normal methods of performance; and (5) whether the employer could reasonably have anticipated the specific conduct in question. See Adorno, 312 F.Supp.2d at 516; Mingo v. U.S., 274 F.Supp.2d 336, 346 (E.D.N.Y. 2003). Courts generally apply greater emphasis to the fifth factor. Mingo, 274 F.Supp.2d at 346. However, an employer need not have foreseen the precise act or the exact manner of injury in order to be held vicariously liable; it is enough that the general type of conduct may have been reasonably expected. Adorno, 312 F.Supp.2d at 516. Although the determination of whether an employee was acting within the scope of his employment is typically a question of fact, summary judgment is appropriate where there is no conflicting evidence as to the material facts. Id.

It is clear that, as a matter of law, Sutton's conduct was not taken within the course of his employment with the City. The undisputed facts in the record indicate that Sutton was off-duty and reacted to the attempted repossession of his cousin's vehicle near their residence. Moreover, the record is bereft of any evidence indicating that the City could have reasonably anticipated that Sutton would commit a criminal act while off-duty or knew that Sutton had a propensity to be violent or to use his weapon in a threatening manner while off-duty. See, e.g. Mingo, 274 F.Supp.2d at 346 (finding that the defendant, who was a special agent with the INS, was not

acting within the course of his employment when he shot the plaintiff, his fiancé, at her home while he was off-duty and, thus, the INS was not vicariously liable for his conduct); Mahmood, 2003 WL 21047728, at * 3-4 (finding that the defendant-officer's conduct in detaining and assaulting the plaintiff were not in furtherance of any police business; but rather were the result of the officer's personal rage brought about by the plaintiff's honking, and, thus, the City was not vicariously liable for the officer's tortious conduct); Longin by Longin v. Kelly, 875 F.Supp. 196, 202 (S.D.N.Y. 1995)(finding that the defendant-peace officer was not acting within the scope of his employment when he shot the infant plaintiff where he was off-duty and on medical leave at the time of the incident and where the evidence established that he was acting to advance his own interests as a member of the community where he resides and, thus, the City was not vicariously liable for his tortious conduct). Accordingly, summary judgment dismissing plaintiffs' *respondeat superior* claims against the City is granted.

### E. State Law Claims

#### 1. Notice of Claim

The City contends that pursuant to N.Y. Gen. Mun. Law § 50-e, plaintiffs cannot maintain their intentional and negligent infliction of emotional distress and conspiracy claims against it because they failed to include those claims in their notice of claim.

Neither plaintiff opposes, or otherwise addresses, this branch of the City's motion.

State notice of claim statutes apply to pendent state law claims in federal court. See, Hardy v. New York City Health & Hosp. Corp., 164 F.3d 789, 793 (2d Cir. 1999); Hazan v. City of New York, 98 Civ. 1716, 1999 WL 493352, at * 6 (S.D.N.Y. Jul. 12, 1999). Under New York

law, a notice of claim is a condition precedent to maintaining tort actions against municipalities. See, N.Y. Gen. Mun. Law § 50-e; Hardy, 164 F.3d at 793. The notice of claim must set forth, among other things, the nature of the claim, and must be filed within ninety days of when the claim arises. See, N.Y. Gen. Mun. Law §§ 50-e(1)(a) and (2); Hardy, 164 F.3d at 793. Notice of claim requirements are strictly construed, and a failure to comply with the requirements generally requires dismissal of the state law claims. See, Hardy, 164 F.3d at 793-794; Hazan, 1999 WL 493352, at * 6. Moreover, any theory of liability omitted from the notice of claim may not be included in a subsequent lawsuit. See, Hazan, 1999 WL 493352, at * 6; Fincher v. County of Westchester, 979 F.Supp. 989, 1003 (S.D.N.Y. 1997).

It is undisputed that plaintiffs did not include their intentional and negligent infliction of emotional distress and state law conspiracy claims in their notice of claim. Accordingly, those state law claims are dismissed with prejudice. See, e.g. Taunus Corp. v. City of New York, 279 F.Supp.2d 305, 309 (S.D.N.Y. 2003)(dismissing plaintiff's claims which were not asserted in the notice of claim); Hazan, 1999 WL 493352, at * 6 (finding that the notice of claim which did not assert negligence as a general theory of liability against the City, nor contain any facts suggesting that its claim was directed to the hiring and supervision practices of the City, did not adequately alert the City to the negligent hiring and supervision claims); Fincher, 979 F.Supp. at 1003 (accord).

2.    Supplemental Jurisdiction

The City contends that since all of plaintiffs' federal claims should be dismissed, this Court should decline to exercise pendant jurisdiction over plaintiffs' remaining state law claims.

Neither plaintiff opposes, or otherwise addresses, this branch of the City's motion.

Since there is no diversity of citizenship between the parties, jurisdiction over plaintiffs' state law claims is supplemental. See, 28 U.S.C. § 1367(c)(3); Valencia ex rel. Franco v. Lee, 316 F.3d 299, 304 (2d Cir. 2003). Pursuant to 28 U.S.C. § 1367(c), a court's decision to exercise supplemental jurisdiction over a pendent claim is permissive, not mandatory. See, Valencia, 316 F.3d at 305; see also United Mine Workers of America v. Gibbs, 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966)(stating that pendent jurisdiction is a doctrine of discretion). "[I]f it appears that the state issues substantially predominate * * * the state claims may be dismissed without prejudice and left for resolution to state tribunals." Giordano v. City of New York, 274 F.3d 740, 754 (2d Cir. 2001)(citing Gibbs, 383 U.S. at 726-727, 86 S.Ct. 1130). The court must "consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction" over the pendent claims. Carnegie-Mellon University v. Cohill, 484 U.S. 343, 350, n. 7, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988). In the "usual case" in which all federal claims are dismissed before trial, "the balance of factors to be considered * * * will point toward declining to exercise jurisdiction" over the pendent claims. Cohill, 484 U.S. at 350, n. 7, 108 S.Ct. 614; see also Barriera v. Bankers Trust, 98 Civ. 3641, 2003 WL 22387099, at * 9 (S.D.N.Y. Oct. 20, 2003).

In light of the dismissal of all federal claims against the City and Doe defendants in this action, I decline to exercise supplemental jurisdiction over the remaining pendent state law claims. Accordingly, those claims are dismissed without prejudice to seeking to pursue them in state court within thirty (30) days from the date of this order.

G.    Discovery

Plaintiffs request, for the first time, an order compelling the City to produce a certain patrolman guide procedure book to which Richards referred during her examination before trial on April 30, 2003. However, in light of the dismissal of all claims against the City in this action, this branch of plaintiffs' cross motion is denied without prejudice to seeking resolution of any discovery issues in state court.

III.    CONCLUSION

The City's motion for summary judgment is granted, plaintiffs' cross motion is denied, and the complaint is dismissed in its entirety as against the City and Doe defendants, without prejudice to plaintiffs seeking to pursue their remaining state law claims and any discovery issues in state court within thirty (30) days from the date of this order. Plaintiffs are advised that in light of their failure to move for a default judgment against Sutton, all claims against him will also be dismissed unless plaintiffs move for a default judgment within thirty (30) days from the date of this order.

/S/ HON. SANDRA J. FEUERSTEIN

SO ORDERED.

_____
SANDRA J. FEUERSTEIN
United States District Judge

Dated: August 24, 2005
         Central Islip, New York

Copies to:

Greenfield, Stein & Senior, LLP
600 Third Avenue, 11th Floor
New York, New York 10016

Zuckerbrod & Taubenfeld
575 Chestnut Street
Cedarhurst, New York 11516

Corporation Counsel of
the City of New York
100 Church Street
New York, New York 10007
Attn:   Phillip C. Kim